## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>Ronald D. Reed,<br><br>　　　　　　Debtor | Chapter 7<br>Case No. 16-10447 |
| Robert Bailey,<br><br>　　　　　　Plaintiff<br>　v.<br><br>Ronald D. Reed,<br><br>　　　　　　Defendant | Adv. Proc. No. 16-1022 |

## MEMORANDUM OF DECISION

Robert Bailey seeks a determination that the debt owed to him by Ronald Reed was not discharged in Mr. Reed's chapter 7 case.  Mr. Bailey contends that the debt is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6).  For the reasons described below, judgment will enter in favor of Mr. Reed.

### I.    FINDINGS OF FACT

The following facts are drawn from the evidence admitted at trial.[1]  That evidence consisted of the testimony of four witnesses and two exhibits, including a decision of the Maine Workers' Compensation Board ("Board").

---

[1]  The Court has also taken judicial notice of the docket entries in this adversary proceeding and in Mr. Reed's chapter 7 case.  *See* Fed. R. Bankr. P. 9017 (making the Federal Rules of Evidence, including Fed. R. Evid. 201, applicable in cases under the Bankruptcy Code); Fed. R. Evid. 201(c)(1).

In 2007, Mr. Bailey began working as a cable installer for K & R Communications ("K & R").  Before this employment commenced, Mr. Bailey was assured that K & R had workers' compensation coverage; this was important to him due to the nature of the work.  K & R was a business formed by Mr. Reed and Kenneth Kronstrand.  Mr. Kronstrand managed the books and paperwork for the company, including the procurement of insurances.  Mr. Reed worked on cable sites and managed the labor.  He and Mr. Bailey had both worked in the cable business for years and had each worked for another business, ICON Connections ("ICON"), at some point.  They had known each other for a long time and sometimes went hunting together.

In the fall of 2007, Mr. Kronstrand was jailed for acts unrelated to K & R.  Mr. Reed then changed the name of the business to Connect ME.  K & R had previously executed an agreement with ICON to perform cable installation and repair work as a subcontractor.  After K & R changed its name, Connect ME continued to perform subcontract work for ICON.  When Mr. Kronstrand left, Mr. Reed began running the business on his own.  Mr. Reed had no prior experience with the administrative and managerial aspects of operating a business.  He had no interest in these tasks and no aptitude for them, but he met with an insurance broker and procured workers' compensation insurance for Connect ME through Maine Employers Mutual Insurance Company ("MEMIC").  When he did so, he paid for the policy in full.

In November or December 2007, Mr. Reed received a notice that Connect ME's workers' compensation policy had been suspended.  Mr. Reed immediately told Mr. Bailey, the company's sole employee at that time, that he had lost his workers' compensation insurance.  He also told ICON's principal, Philip DelVecchio, that Connect ME would be unable to perform work for ICON until its workers' compensation policy was reinstated.  He hired an accountant to help him work on reinstatement of the policy.

After the suspension of Connect ME's workers' compensation policy, ICON's foreman called Mr. Reed frequently to inquire about reinstatement of the insurance. Mr. DelVecchio also called Mr. Reed to ask whether the policy had been reinstated. Mr. Reed told Mr. DelVecchio that his policy was not scheduled to be reinstated until February 8, 2008. Mr. DelVecchio responded that he needed people at work immediately, and told Mr. Reed that he needed Connect ME to return to work due to the volume of customer work orders. Mr. DelVecchio asked Mr. Reed to "come back under" ICON and asked whether Mr. Bailey would also be interested in "coming back" to ICON. From this conversation, Mr. Reed understood that if Connect ME returned to work, the company would be "under ICON" and that ICON's workers' compensation policy would cover him and Mr. Bailey until his coverage resumed. Mr. Reed told Mr. Bailey that Mr. DelVecchio had offered to bring the two of them back to work "under" ICON. The two anxiously returned to work in mid-January 2008, for the first time since the suspension of Connect ME's workers' compensation insurance.

On February 4, 2008, Mr. Bailey was up on a ladder installing cable, when the ladder slipped on ice and he fell twenty feet to the ground. Upon impact, he suffered a concussion, cracked ribs, and a dislocation of his left shoulder. He was transported from the accident to the hospital via ambulance and then by helicopter. At the time of the accident, both Mr. Reed and Mr. Bailey believed that they were "working under" ICON.

In July 2008, Mr. Bailey commenced a proceeding before the Board, seeking payment of benefits and medical bills. His proceeding eventually sought relief from MEMIC, Connect ME, and ICON. The primary issue before the Board was the identity of Mr. Bailey's employer at the time of the injury. After a contested hearing, the Board decided that Mr. Bailey had been employed by Connect ME, and not by ICON, at the time of the accident. The Board also found

that Mr. Bailey had been totally incapacitated by his injuries for several weeks and partially incapacitated thereafter. The Board ordered Connect ME to pay Mr. Bailey incapacity benefits, and to pay certain of Mr. Bailey's medical expenses.[2] The Board's decision was later adopted as a decision of the Maine Superior Court under 39-A M.R.S.A. § 323.

In July 2016, Mr. Reed filed a chapter 7 petition. On his Schedule E/F, he listed Mr. Bailey as a creditor holding an unsecured workers' compensation claim for $150,000. In October 2016, Mr. Bailey filed an adversary complaint to determine the dischargeability of the workers' compensation award owed by Mr. Reed. The Court held a trial on Mr. Bailey's complaint in August 2017.[3] At the close of the evidence, Mr. Reed made an oral motion "for judgment as a matter of law under Rule 52(c)." The Court took Mr. Bailey's complaint and Mr. Reed's motion under advisement and received post-trial briefs from both parties.

## II.    DISCUSSION

As the party seeking to prevent discharge of Mr. Reed's debt to him, Mr. Bailey bears the burden of proving, by a preponderance of the evidence, that the debt falls squarely within one of the statutory exceptions to discharge. *See* Grogan v. Garner, 498 U.S. 279, 286-87 (1991); Palmacci v. Umpierrez, 121 F.3d 781, 787 (1st Cir. 1997). "Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's fresh start policy[.]" Palmacci, 121 F.3d at 785 (quotation marks omitted). A discharge offers debtors "a new opportunity in life and

---

[2] The Board did not specifically order Mr. Reed to pay Mr. Bailey's workers' compensation award, and the record does not clarify whether Connect ME was a separate legal entity. In his schedules, Mr. Reed indicated that he was liable for Mr. Bailey's claim.

[3] In the complaint, Mr. Bailey asserted that the award was excepted from discharge under 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6). The complaint was later amended, on Mr. Bailey's motion, to correct a typographical error. In his answer to the complaint, Mr. Reed requested an award of attorney fees under 11 U.S.C. § 523(d). At trial, Mr. Bailey abandoned his arguments under section 523(a)(4), and Mr. Reed abandoned his request for relief under section 523(d).

- 4 -

a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." McCrory v. Spigel (In re Spigel), 260 F.3d 27, 31 (1st Cir. 2001) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)).  However, by seeking discharge, debtors place the rectitude of their previous dealings in issue, as the Code limits the availability of discharge to the "honest but unfortunate debtor."  In re Spigel, 260 F.3d at 32 (quoting Brown v. Felsen, 442 U.S. 127, 128 (1979)).  The Code "does not condition discharge upon a general determination of the moral character of the debtor."  Id.  Instead, section 523(a) identifies certain types of debts that Congress has determined should not be discharged in most types of bankruptcy cases.  In this proceeding, there are two statutory exceptions to discharge in play: 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6).  Each is addressed in turn below.

    A.  *Section 523(a)(2)(A) – False Pretenses, False Representation, or Actual Fraud*

Under section 523(a)(2)(A), a chapter 7 discharge "does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud[.]" 11 U.S.C. § 523(a)(2)(A).  The last phrase in this statute, "to the extent obtained by," modifies the phrase "money property, services, or . . . credit."  Cohen v. de la Cruz, 523 U.S. 213, 218 (1998).  As such, the exception covers "any debt . . . for money, property, services, or . . . credit, to the extent that the money, property, services or . . . credit is obtained by fraud," false pretenses, or false misrepresentation.  Id. (alterations omitted) (quotation marks omitted).

> [I]n order to establish that a debt is nondischargeable because obtained by false pretenses, a false representation, or actual fraud, . . . a creditor must show that 1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the misrepresentation, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage.

In re Spigel, 260 F.3d at 32 (footnote omitted) (quotation marks omitted).

The second element, intent to deceive, can be established by proof that the debtor "'(a) knows or believes that the matter is not as he represents it to be; (b) does not have the confidence in the accuracy of his representation that he states or implies; or (c) knows that he does not have the basis for his representation that he states or implies.'" Palmacci, 121 F.3d at 787 (quoting Restatement (Second) of Torts § 526 (1977)). Here, the analysis bleeds into the third element, intent to induce reliance. "Fraudulent intent requires an actual intent to mislead, which is more than mere negligence." Id. at 788.

"This is not a negligence case where the standard is whether a reasonable person would have acted as [Mr. Reed] did." Id. If Mr. Reed actually knew or clearly should have known that he and Mr. Bailey would not be covered by ICON's worker's compensation policy, that actual or constructive knowledge is probative of whether Mr. Reed intended to deceive Mr. Bailey by suggesting that ICON's policy would cover them. See id. at 789. "But the focus must be on whether the representation was made in bad faith," i.e., whether Mr. Reed induced Mr. Bailey to return to work with the intent to deceive Mr. Bailey into believing that ICON's policy would cover him, or in reckless disregard of whether ICON's policy would cover him. See id.

The outcome of Mr. Bailey's section 523(a)(2)(A) claim can readily be determined by consideration of the evidence related to Mr. Reed's knowledge and intent. There is no credible evidence that Mr. Reed actually knew or clearly should have known that his representation to Mr. Bailey about ICON providing insurance was false when he made it.[4] And, there is no

---

[4] At trial, Mr. DelVecchio denied telling Mr. Reed that he and Mr. Bailey could work "under" ICON or "under" ICON's policy. The Court, as fact finder, has credited Mr. Reed's testimony to the contrary. Mr. Reed's demeanor was consistent with his narrative, both of which painted the picture of an unwitting, but well-meaning businessman trying to make the best out of a difficult and unwelcome situation. The Court was less persuaded by conflicting testimony about what was said to Mr. Reed or what Mr. Reed, in fact, believed when he and Mr. Bailey returned to work in 2008.

evidence that Mr. Reed intended to deceive Mr. Bailey or to induce him to return to work without workers' compensation coverage. If Mr. Reed had intended to induce Mr. Bailey to work for him without insurance coverage, he could likely have accomplished this objective more directly by trying to conceal the suspension. That is not what happened. Instead, Mr. Reed notified Mr. Bailey and ICON about the loss of insurance and Connect ME promptly stopped working. Mr. Reed tried to arrange the reinstatement of the policy, and he was without work for weeks, fending off calls from ICON's managers asking him to return to work. He and Mr. Bailey only started working again weeks later, after Mr. DelVecchio offered to bring them back "under" ICON.

When they went back to work, Mr. Reed held a good faith belief that he and Mr. Bailey were covered by ICON's workers' compensation policy. Given Mr. Reed's inexperience with business matters, the Court does not infer that he clearly should have known that ICON's policy would not cover him or Mr. Bailey. The totality of the circumstances indicates that Mr. Reed misunderstood his arrangement with Mr. DelVecchio and mistakenly believed that ICON was providing insurance coverage for him and Mr. Bailey until his own policy was reinstated. Mr. Bailey failed to carry his burden of proof on the elements of knowledge and intent; his claim of nondischargeability under section 523(a)(2)(A) is therefore denied.[5]

---

Under principles of collateral estoppel, the Court is bound by findings on factual issues that were in dispute before the Board if the Board actually and necessarily made the findings in reaching its decision. See B.B. v. Bradley (In re Bradley), 466 B.R. 582, 586 (B.A.P. 1st Cir. 2012); see also Jones v. Svreck (In re Jones), 300 B.R. 133, 138 (B.A.P. 1st Cir. 2003). The Board found that Mr. DelVecchio had *not* offered to extend ICON's workers' compensation coverage to Connect ME. The Court's findings about Mr. DelVecchio's representations are in tension with findings made by the Board. However, the Court is not bound by the Board's findings about Mr. DelVecchio's representations because, as the Board recognized, those findings were not essential to its ultimate determination as to the identity of Mr. Bailey's employer at the time of his injury.

[5] Because Mr. Bailey's section 523(a)(2)(A) claim fails on the elements related to Mr. Reed's scienter, the Court does not resolve the parties' disagreements as to the remaining elements of this claim.

B.  *Section 523(a)(6) – Willful and Malicious Injury*

Under section 523(a)(6), a chapter 7 discharge "does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity[.]"  11 U.S.C. § 523(a)(6).  "Willful and malicious are distinct elements" in the analysis of nondischargeability under section 523(a)(6).  McAlister v. Slosberg (In re Slosberg), 225 B.R. 9, 16 (Bankr. D. Me. 1998) (quotation marks omitted).  As distinct elements, they must have independent significance.  Id. at 19-20.

In this context, malice does not require a showing that the debtor acted with personal malevolence or ill-will.  Printy v. Dean Witter Reynolds, Inc., 110 F.3d 853, 859 (1st Cir. 1997).  Instead, malice is established by a showing that the debtor's injurious conduct was undertaken without just cause or excuse.  Id.; *see* B.B. v. Bradley (In re Bradley), 466 B.R. 582, 587 (B.A.P. 1st Cir. 2012) (discussing the malice standard adopted in Printy and noting that courts in the First Circuit continue to apply that standard in the wake of Kawaauhau v. Geiger, 523 U.S. 57 (1998)).  The term "willful," in this context, means "deliberate or intentional."  Geiger, 523 U.S. at 61 n.3 (quoting the statute's legislative history).  In section 523(a)(6), the term "willful" modifies the term "injury," indicating that a debt is excepted from discharge only if it arises from an act done with intent to cause injury.  Id. at 61.  Section 523(a)(6) does not insulate from discharge a debt arising from an intentional act that results in an unintentionally inflicted injury.  *See* id.  As such, "debts arising from recklessly or negligently inflicted injuries do not fall within" section 523(a)(6).  Id. at 64.

Section 523(a)(6) "triggers in the lawyer's mind the category [of] intentional torts[.]"  Id. at 61 (quotation marks omitted).  "Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'"  Id. at 61-62 (quoting Restatement (Second)

of Torts § 8A, Comment a, p. 15 (1964)). More specifically, intent in tort law means that the actor either "desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965). As such, the willfulness element of section 523(a)(6) would be satisfied by an act that was done intentionally and which the actor knew to be substantially certain to cause injury. *See* In re Bradley, 466 B.R. at 587; In re Slosberg, 225 B.R. at 19; *see also* Mitsubishi Motors Credit of Am., Inc. v. Longley (In re Longley), 235 B.R. 651, 657 (B.A.P. 10th Cir. 1999); 523 Collier on Bankruptcy ¶ 523.12[2] n.30 (collecting cases).[6]

With the elements of section 523(a)(6) thus dissected, it is apparent that the statute will only bar discharge of a debt if the creditor can establish that (1) the creditor was injured; (2) the injury was caused by the debtor's actions; (3) the debtor intended to cause the injury or acted with substantial certainty that the injury would occur; and (4) the debtor lacked just cause or excuse for the action that led to the injury. In re Bradley, 466 B.R. at 587.

"A number of courts have considered the dischargeability of debtor/employers' unpaid (*i.e.* uninsured) obligations to injured former employees under [section] 523(a)(6). Most decisions hold such obligations dischargeable." Collora v. Leahy (In re Leahy), 170 B.R. 10, 14 (Bankr. D. Me. 1994) (collecting cases). There are decisions supporting Mr. Bailey's argument

---

[6] In his post-trial brief, Mr. Bailey suggests that the Court should utilize the standard for maliciousness announced by the Eighth Circuit Court of Appeals in Barclays Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 881 (8th Cir. 1985). But, as the court in McAlister v. Slosberg (In re Slosberg) aptly noted, the "targeted at the creditor" test of maliciousness has been subsumed in the Geiger definition of willfulness. 225 B.R. 9, 20 & n.16 (Bankr. D. Me. 1998).

Mr. Bailey has also asked the Court to consider Carter v. Verhelst (In re Verhelst), 170 B.R. 657 (Bankr. W.D. Ark. 1993), asserting that the decision provides "a spot-on analysis of what it takes to prevail" under section 523(a)(6). [Dkt. No. 32.] However, Verhelst was decided before the Supreme Court ruled, in Geiger, that a debtor acts willfully within the meaning of section 523(a)(6) only when the act is coupled with the intent to cause injury. *See* Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998); *see also* In re Verhlest, 170 B.R. at 661-62 (concluding that the debtor acted willfully when he acted knowingly and deliberately).

Case 16-01022    Doc 37    Filed 11/07/17    Entered 11/08/17 16:32:25    Desc Main
            Document      Page 10 of 12

on section 523(a)(6), but those decisions are based on facts that are materially different than the facts in this case, or are otherwise based on a view of section 523(a)(6) that was rejected by the Supreme Court in Geiger.  *See, e.g.,* Hilliard v. Peel (In re Peel), 166 B.R. 735, 738 (Bankr. W.D. Okla. 1994) (determining that a debt for funds withheld from an employee's check was not dischargeable in the employer's bankruptcy when the employer falsely represented that he was using the funds to buy workers' compensation insurance); Vig v. Erickson (In re Erickson), 89 B.R. 850, 852 (Bankr. D. Idaho 1988) (declaring that section 523(a)(6) does not focus on the debtor's intent to inflict injury, but instead focuses on the intent to perform the act that gives rise to the injury).  Geiger makes it clear that section 523(a)(6) focuses on intent to inflict injury, not intent to perform an act (even if that act results in injury).  523 U.S. at 61.

In Roumeliotis v. Popa (In re Popa), 140 F.3d 317 (1st Cir. 1998), a gas station attendant sought to prevent his employer from discharging a workers' compensation debt owed to him for severe injuries, including the loss of an eye, that he sustained when he was assaulted while working alone in a high-crime area.  Id. at 317.  At the time of the injuries, the employer did not have workers' compensation insurance.  Id.  The First Circuit recognized that the employer's failure to obtain insurance "was an intentional act that caused injury" but also recognized that the "failure to obtain insurance was not done . . . with the actual intent to cause injury."  Id. at 318.  Accordingly, the Court affirmed the determination that the debt was not excepted from discharge under section 523(a)(6).

Unlike the employer in Popa, Mr. Reed was not intentionally operating a business without workers' compensation insurance on the date of Mr. Bailey's accident.  As previously discussed, the Court is persuaded that Mr. Reed was instead operating under a good-faith misunderstanding that Mr. DelVecchio's company was covering him and Mr. Bailey at that time.

Moreover, as in Popa, Mr. Reed's failure to secure workers' compensation insurance on the date of Mr. Bailey's accident was not done with the actual intent to cause injury. There is no evidence that Mr. Reed failed to secure workers' compensation coverage for Mr. Bailey with the specific intent or the substantial certainty that Mr. Bailey would sustain physical injuries while on the job and without insurance. It appears that Mr. Bailey and Mr. Reed were on good terms before the accident occurred, and there is no indication that the injuries were intended by Mr. Reed. Therefore, the debt arising out of Mr. Bailey's fall does not fit within section 523(a)(6).

### III.    CONCLUSION

Mr. Bailey asserts that permitting Mr. Reed to discharge his debt to Mr. Bailey "would constitute an incredibly inequitable result[.]" [Dkt. No. 32.] But, Congress did not create an "across-the-board exception for unpaid workers' compensation claims[.]" *See* In re Leahy, 170 B.R. at 14. The circumstances here are unfortunate: Mr. Reed was operating a business in a manner that violated state laws designed to protect employees. Though it is not difficult to sympathize with Mr. Bailey's desire to have Mr. Reed held accountable for his injuries, the Court is bound to except from discharge only those debts that fall squarely within one of the exceptions set forth in the Code. Based on the analysis set forth above, judgment will enter

against Mr. Bailey and in favor of Mr. Reed on all counts of Mr. Bailey's complaint.[7]

Dated:  November 7, 2017

_Michael A. Fagone_ (signature)
Michael A. Fagone
United States Bankruptcy Judge
District of Maine

---

[7] Mr. Reed's oral motion under Fed. R. Civ.P. 52(c) is denied.  Rule 52(c) is applicable to this adversary proceeding.  *See* Fed. R. Bankr. P. 7052.  However, a judgment on partial findings under Fed. R. Civ. P. 52(c) is appropriate "where the party bearing the burden of proof has finished presenting evidence and the evidence is deemed by the trier insufficient to sustain the party's burden[.]"  Fraser v. Rowlands (In re Rowlands), No. MB 08-047, 2008 WL 8664766, at *4 (B.A.P. 1st Cir. Dec. 30, 2008).  Under Rule 52(c), "the movant should prevail if the non-moving party has failed to make out a prima facie case, or if the court determines that a preponderance of the evidence goes against the moving party's claims."  Id.  In other words, a Rule 52(c) motion should ordinarily be made after the plaintiff rests its case and before the defendant puts on its case.  In this proceeding, Mr. Reed's Rule 52(c) motion was made at the conclusion of the trial.  Because the Court has ruled in favor of Mr. Reed after the conclusion of the trial, there is no reason for the Court to enter judgment against Mr. Reed on partial findings under Rule 52(c).  Thus, the Rule 52(c) motion is denied.